IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


```
KENNETH SCOTT SMITH,            )
                               )
                Plaintiff,     )
                               )
vs.                            )        Case No. 06-1271-MLB
                               )
MICHAEL J. ASTRUE,[1]          )
Commissioner of                )
Social Security,               )
                               )
                Defendant.     )
_____)
```


RECOMMENDATION AND REPORT


This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner

---

[1]On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

1

as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be

2

determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does

3

not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## II.  History of case

On December 18, 2005, administrative law judge William Rima

III issued his decision (R. at 21-31).  At step one, the ALJ
found that plaintiff was not engaged in substantial gainful
activity since plaintiff's alleged onset date of April 5, 2004
(R. at 21, 24).  At step two, the ALJ found that plaintiff had
the following severe impairments: depressive disorder NOS, rule
out alcohol induced mood disorder, rule out substance induced
mood disorder, antisocial personality disorder, history of
alcohol dependence and substance abuse (R. at 24).  At step
three, the ALJ determined that plaintiff's impairments meet or
equal listed impairment 12.09, substance addiction disorder (R.
at 26-27, 29).  The ALJ further determined that absent substance
abuse, plaintiff would still have severe impairments, but they
would not meet or equal a listed impairment (R. at 29).  After
establishing plaintiff's RFC absent substance abuse, the ALJ
found at step four that plaintiff could perform past relevant
work as an aircraft assembly worker, and further found that
plaintiff could perform a significant number of jobs in the
national economy (R. at 30).  Because the plaintiff would not be
disabled if he stopped the substance abuse, the ALJ found that
plaintiff's substance abuse disorder is a contributing factor
material to the determination of disability.  Thus, the ALJ
concluded that plaintiff was not disabled (R. at 30).

**III.  Did the ALJ err in his evaluation of the opinions of Dr.
Eyster, plaintiff's treating physician?**

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so. Watkins, 350

F.3d at 1301.

An ALJ must evaluate every medical opinion in the record, although the weight given to each opinion will vary according to the relationship between the disability claimant and the medical professional. <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir. 2004). In the determination of issues reserved to the Commissioner, such as opinions regarding: whether an impairment meets or equals a listing, plaintiff's RFC, whether a plaintiff can do past relevant work, how age, education, and work experience apply, and whether a plaintiff is disabled, treating source opinions are not entitled to special significance or controlling weight. <u>Soc. Sec. Rul.</u> 96-5p, (Medical Source Opinions on Issues Reserved to the Commissioner), 1996 WL 374183, at *2. However, even on issues reserved to the Commissioner, including the RFC determination and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3. It is clear legal error to ignore a medical opinion. <u>Victory v. Barnhart</u>, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005). It is reversible error for the ALJ not to discuss uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he rejects. <u>Grogan v. Barnhart</u>, 399 F.3d 1257, 1266 (10th Cir. 2005).

In a letter dated August 25, 2005, Dr. Eyster stated the

following:

> I have seen Kenneth Scott Smith on three
> occasions.  His primary problems that I have
> treated him for are a degenerative disc
> condition of the neck with an MRI study
> showing not only narrowing at 5-6 but bulging
> disc symptoms that correlates with the fact
> that he is having some numbness in his left
> arm and some weakness.  He also has bilateral
> tennis elbow type symptomatology or
> epicondylitis.
>
> **If a job were available, he would have a
> difficulty having a job that required
> pushing, pulling or lifting over ten pounds
> with the upper extremities or any type of job
> that required repetitive action of the wrist
> or elbow.**

(R. at 303, emphasis added).  Dr. Eyster's treatment note of

August 31, 2005 states the following:

> The patient has bilateral elbow pain.  It has
> improved with the stretching exercises.  **The
> patient is still having trouble finding a job
> that meets within the restrictions.  The
> patient's restrictions remain the same.**  The
> patient however is improved but I do not
> recommend further medical treatment.

(R. at 320, emphasis added).  Dr. Eyster's records also indicate

that on September 22, 2005, plaintiff called and requested L5

(which plaintiff had asked for numerous times), but Dr. Eyster

indicated they would not be giving him that anymore (R. at 320).

The last treatment note, dated September 26, 2005, indicates that

plaintiff had a return of pain radiating from the neck, and Dr.

Eyster elected to try another epidural (R. at 319).

The ALJ discussed the records of Dr. Eyster as follows:

8

In May 2005, the claimant was referred to Dr
Eyster for his back and elbow complaints. MRI
of the back noted some degenerative disc
disease with a narrowing at C5-7 with some
tennis elbow type symptomatology or
epidondylitis based on repetitive overuse.
The claimant was treated with epidural
injection. He requested a disability
statement with one provided that the claimant
would have difficulty with a job that
required pushing, pulling or lifting over 10
pounds with the upper extremities or any type
of job that required repetitive action of the
wrist or elbow. On August 31, 2005, Dr.
Eyster noted that the claimant was improved
and he did not recommend further treatment.
On September 22, 2005, Dr. Eyster noted that
the claimant continued to ask for Lortab (L5)
with a notation that he would not be giving
that to him anymore (exhibit 14F, 16F).

(R. at 26).  Subsequently in his decision, the ALJ further

stated:

Dr. Eyster noted some limitations in May 2005
with improvement by August 2005.  Dr. Eyster
did provide epidural injections, but declined
to continue Lortab which had been requested
"numerous" times by the claimant (Exhibit
16F).

Overall, the undersigned finds no significant
ongoing physical limitations.

(R. at 29).

The ALJ's decision noted the limitations set by Dr. Eyster,

and then cited to the August 31, 2005 note in Dr. Eyster's

records to find that plaintiff had improved and did not recommend

further treatment.  However, the ALJ failed to mention that

portion of Dr. Eyster's August 31, 2005 treatment note which

clearly and unambiguously indicates that plaintiff's physical

9

restrictions remain the same.  Furthermore, Dr. Eyster's medical records indicate he gave plaintiff an epidural treatment for pain on September 26, 2005 after indicating in his August 31, 2005 note that he did not recommend any further treatment.  An ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th Cir. 2004).  The ALJ failed to discuss Dr. Eyster's finding of ongoing physical limitations, and failed to offer any explanation for not including those physical limitations in plaintiff's RFC. The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).  Because the ALJ failed to address the opinion of Dr. Eyster that plaintiff has ongoing physical limitations, the court finds that the ALJ's conclusion that plaintiff has no significant ongoing physical limitations is not supported by substantial evidence.

**IV.  Did the ALJ err by failing to consider the effect of plaintiff's antisocial personality disorder on his ability to**

**work?**

Plaintiff notes that he has been repeatedly diagnosed with antisocial personality disorder (Doc. 12 at 26-27).  Plaintiff then asserts that the ALJ failed to consider plaintiff's antisocial personality disorder.  However, the ALJ found at step two that plaintiff had a severe impairment of antisocial personality disorder (R. at 24).  The ALJ noted that Dr. Moeller indicated that, absent the substance abuse issues, plaintiff had a probable antisocial personality disorder, but was nonetheless able to understand, remember, and carry out instructions and respond appropriately to supervision, co-workers, and work pressures in a work setting with only moderate limitations regarding interacting appropriately with the public (R. at 29).  The ALJ incorporated these limitations in his RFC findings (R. at 30).  Therefore, the court finds no merit in plaintiff's contention that the ALJ failed to consider plaintiff's antisocial personality disorder.

**V.   Did the ALJ err in his finding that plaintiff's substance abuse disorder is a contributing factor material to the determination of disability?**

In 1996, Congress passed Public Law 104-121.  It added the following language to 42 U.S.C. § 423(d)(2):

> (C) An individual shall not be considered to
> be disabled for purposes of this title if
> alcoholism or drug addiction would (but for

11

this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

20 C.F.R. § 404.1535 provides further guidance on this issue.  It states as follows:

(a) *General.*  If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(b) *Process we will follow when we have medical evidence of your drug addiction or alcoholism.*  (1)The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using alcohol or drugs.

 (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

 (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

 (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

The implementing regulations make clear that a finding of

disability is a condition precedent to an application of §423(d)(2)(C).  The Commissioner must first make a determination that the claimant is disabled.  He must then make a determination whether the claimant would still be found disabled if he or she stopped abusing alcohol or drugs.  If so, then the alcohol or drug use is not a contributing factor material to the finding of disability.  If however, the claimant's remaining impairments would not be disabling without the alcohol or drug abuse, then the alcohol or drug abuse is a contributing factor material to the finding of disability.  The ALJ cannot begin to apply §423(d)(2)(C) properly when he has not yet made a finding of disability.  Drapeau v. Massanari, 255 F.3d 1211, 1214-1215 (10th Cir. 2001).[2]  The claimant has the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination.  Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001); Doughty v. Apfel, 245 F.3d 1274, 1279-1280 (11th Cir. 2001); Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000); Brown v. Apfel, 192 F.3d 492, 498 (5th Cir. 1999).

POMS DI 90070.050 DAA Material Determinations, states in subsection (D)(1) that the Social Security Administration "will

---

[2]According to 20 C.F.R. § 1520(a)(4)(iii), if a claimant has an impairment which meets or equals a listed impairment, the claimant will be found to be disabled.  In this case, the ALJ, by finding that plaintiff met listed impairment 12.09 (drug addiction and alcohol), found plaintiff to be disabled.

13

make a finding that DAA [drug addiction and alcoholism] is material only when the evidence establishes that the individual would not be disabled if he/she stopped using drugs or alcohol" (https://s044a90.ssa.gov/apps10/poms.nsf/lnx/0490070050! opendocument, July 3, 2007).  The Program Operations Manual System (POMS) is a policy and procedural manual that employees of the Social Security Administration use in evaluating social security claims.  Although the POMS does not have the force and effect of law, it is nevertheless a persuasive interpretation by the Commissioner of binding statutory and regulatory law.  Davis v. Secretary of Health & Human Services, 867 F.2d 336, 340 (6th Cir. 1989); Stillwell v. Sullivan, 1992 WL 401971 at *6 (D. Kan. Dec. 30, 1992)(Belot, D.J.).  The court's review of an agency's interpretation of a statute or regulation it administers is highly deferential.  The agency's interpretation, as set out in a POMS, is given controlling weight unless it is arbitrary, capricious, or contrary to law.  In other words, the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulations.  McNamar v. Apfel, 172 F.3d 764, 766, 767 (10th Cir. 1999).

If the ALJ is unable to determine whether substance abuse disorders are a contributing factor material to the claimant's otherwise acknowledged disability, the claimant's burden has been met and an award of benefits must follow.  Brueggemann v.

Barnhart, 348 F.3d 689, 693 (8th Cir. 2003)(citing to Social
Security Administration Emergency Teletype, No. EM-96-94 at
Answer 29 (Aug. 30, 1996).  In colloquial terms, on the issue of
the materiality of alcoholism, a tie goes to the claimant.
Brueggemann at 693.

The Emergency Teletype cited in Brueggemann provides that
there will be cases in which the evidence demonstrates multiple
impairments, especially cases involving multiple mental
impairments, where the consultant cannot project what limitations
would remain if the individual stopped using alcohol or drugs.
In such cases, since a finding that drug or alcohol addiction
(DAA) is material will be made only when the evidence establishes
that the individual would not be disabled if he/she stopped using
alcohol or drugs, the disability examiner will find that DAA is
not a contributing factor material to the determination of
disability.  Fastner v. Barnhart, 324 F.3d 981, 986 n.5 (8th Cir.
2003).

In the case of Salazar v. Barnhart, 468 F.3d 615 (10th Cir.
2006), the court referred to a teletype sent out by the
Commissioner which pertains to Pub. L. 104-121.  The court
summarized portions of the teletype as follows:

> Shortly after the law [Pub. L. 104-121] was
> amended, the Commissioner sent out a teletype
> on applying the new law, which speaks to
> situations where a claimant has one or more
> other mental impairments in addition to DAA.
> It stresses the need for careful examination

> of periods of abstinence and also directs
> that if the effects of a claimant's mental
> impairments cannot be separated from the
> effects of substance abuse, the DAA is not a
> contributing factor material to the
> disability determination...
>
> With regard to the materiality finding, the
> Commissioner's teletype further directs that
> where a medical or psychological examiner
> cannot project what limitations would remain
> if the claimant stopped using drugs or
> alcohol, the disability examiner should find
> that DAA is not a contributing factor
> material to the disability determination...
>
> Further, the Commissioner's teletype
> instructs that where the record is devoid of
> any medical or psychological report, opinion,
> or projection as to the claimant's remaining
> limitations if she stopped using drugs or
> alcohol, an ALJ should "find that DAA is not
> a contributing factor material to the
> determination of disability."

Salazar, 468 F.3d at 623, 624.

Dr. Don Blasi, plaintiff's treating psychologist, diagnosed plaintiff with schizoaffective disorder and passive aggressive personality disorder.  Dr. Blasi opined that these impairments were disabling by themselves, and that plaintiff's limitations resulting from these impairments would be disabling even if drug and alcohol use were to stop (R. at 276).  However, in response to questions from the ALJ, Dr. Blasi stated that he did not administer the drug and alcohol abuse subtests of the MMPI-2 because he is not certified as a substance abuse evaluator, and therefore he does not submit that diagnosis even if he believes the client has that problem (R. at 302).  The ALJ evaluated Dr.

16

Blasi's opinion as follows:

> Although Dr. Blasi reported that the claimant
> was disabled without consideration of drugs
> or alcohol (exhibit 10F), he later stated
> that he is not certified as a substance abuse
> evaluator and does not submit that diagnosis
> even when he believes the claimant has that
> problem (exhibit 14F/148). Therefore, his
> assessments are given little weight.

(R. at 27).

A psychological evaluation was also performed by Dr.
Moeller.  Dr. Moeller opined that plaintiff had a moderate
limitation in interacting appropriately with the public, and
slight limitations in interacting appropriately with supervisors,
interacting appropriately with co-workers, responding
appropriately to work pressures in a usual work setting,
responding appropriately to changes in a routine work setting,
and carrying out detailed instructions (R. at 285-286).  After
discounting Dr. Blasi's opinion, as set forth above, the ALJ then
summarized the opinions of Dr. Moeller as follows:

> A review of the evidence from Dr. Moeller
> finds that the claimant has a substantial
> history of substance abuse with very recent
> remission. Absent the substance abuse
> issues, the claimant has some depressive disorder NOS
> with probable antisocial personality disorder
> and to continue to rule out alcohol-induced
> mood disorder, continue to rule out other
> substance-induced mood disorder and continue
> to rule out malingering. However, absent the
> substance abuse the claimant is able to
> understand, remember and carry out
> instructions and respond appropriately to
> supervision, coworkers and work pressures in
> a work setting with only moderate limitations

17

regarding interacting appropriately with the
public (exhibit 12F/126).

(R. at 27).

Plaintiff contends that the ALJ improperly discounted the
opinion of Dr. Blasi.  However, the court finds no error in the
ALJ's analysis of the opinions of Dr. Blasi and Dr. Moeller, or
in the relative weight given to their respective opinions.

Plaintiff also contends that Dr. Moeller's report does not
clearly state that drug or alcohol addiction is a contributing
factor material to the disability determination (Doc. 12 at 34-
35).  In answer to the question of whether plaintiff's alcohol
and/or substance abuse contribute to plaintiff's limitations, Dr.
Moeller indicated that although plaintiff alleges a short period
of sobriety, Dr. Moeller believed that it is likely his
difficulties are enhanced by his use of chemical abuse (R. at
286).  Dr. Moeller did not answer the next question on the form,
which stated that if the examiner concluded that the medical
record indicates that plaintiff's alcohol and/or substance abuse
contributes to his limitations, the examiner is asked to identify
and explain what changes the examiner would make to his answers
if the plaintiff was totally abstinent from alcohol and/or
substance abuse (R. at 287).  In Dr. Moeller's summary and
recommendations, Dr. Moeller indicated the following:

> I believe this gentleman to have some degree
> of impairment.  However, that appears to be
> largely a function of his personality

18

> structure and the result of his chemical use.
> His extensive history suggests there is a
> likelihood of ongoing chemical abuse, and the
> prognosis for sustained remission is
> questionable.
>
> However, it must be remembered during the
> current evaluation Mr. Smith reported a
> three-week history of abstinence from alcohol
> and a somewhat unclear history of abstinence
> from other drugs for several months...
>
> As a result of his symptom magnification, I
> was not able to substantiate any diagnosis of
> Schizoaffective Disorder.  There is most
> likely a mood disorder present,[3] and even at
> its current level, it does not by itself
> disable Mr. Smith from simple, gainful
> employment.  By his own statements, he is
> active in helping his parents to remodel a
> house.  He is independent for ADL's, and he
> was able to ask and respond to basic
> questions.  Concentration and attention were
> within the adequate range for independent
> functioning and employment.
>
> With continued abstinence, treatment with Dr.
> McDonnough and Dr. Blasi, and participation
> in active recovery, I believe his symptoms
> will diminish within the next 12 months.

(R. at 283).

Dr. Moeller's report indicates that his evaluation was taken

at a time when plaintiff reported that he was abstinent from

alcohol for 3 weeks, and abstinent from drugs for several months.

Dr. Moeller's report therefore provides an opinion regarding

plaintiff's limitations during a period of time when plaintiff

had stopped using drugs.  The Commissioner's teletype stresses

---

[3]Dr. Moeller also diagnosed depressive disorder (R. at 284).

19

the need for careful examination of periods of abstinence, which occurred in this case.  During this period of abstinence, Dr. Moeller opined that plaintiff's impairments were not disabling. Therefore, the ALJ had a psychological opinion that plaintiff's remaining limitations during a period of time when he had stopped using drugs and alcohol were not disabling.  Thus, medical opinion evidence is in the record to support the ALJ's finding that plaintiff's alcohol and drug use was a contributing factor to the determination of plaintiff's disability.

Plaintiff also argues that the ALJ failed to provide a reason for not including in his RFC findings Dr. Moeller's opinion that plaintiff has slight limitations in interacting appropriately with supervisors, interacting appropriately with co-workers, responding appropriately to work pressures in a usual work setting, responding appropriately to changes in a routine work setting, and carrying out detailed instructions (R. at 285-286).  The ALJ's RFC findings indicate that plaintiff has the ability to understand, remember and carry out instructions and respond appropriately to supervisors, co-workers, and work pressures in a work setting (R. at 30).  The ALJ offered no explanation for not including in his RFC findings the slight limitations found by Dr. Moeller.[4]  Therefore, when this case is

---

[4]The ALJ did include in his RFC findings Dr. Moeller's opinion that plaintiff has a moderate limitation regarding interacting appropriately with the general public (R. at 30).

remanded, the ALJ shall either include Dr. Moeller's findings of slight limitations in the areas specified in his evaluation, or provide an explanation for not including these limitations in the RFC findings.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on July 11, 2007.

                          s/John Thomas Reid
                          JOHN THOMAS REID
                          United States Magistrate Judge